## PROFFER AGREEMENT

With respect to the meeting of James Santaniello ("Client") and his attorney, Nick Akerman, Esq., with Assistant United States Attorney James Santaniello to be held at the Office of the United States Attorney for the Southern District of New York on June 23, 2010 ("the meeting"), the following understandings exist:

(1) **THIS IS NOT A COOPERATION AGREEMENT.** The Client has agreed to provide the Government with information, and to respond to questions, so that the Government may evaluate Client's information and responses in making prosecutive decisions. By receiving Client's proffer, the Government does not agree to make a motion on the Client's behalf or to enter into a cooperation agreement, plea agreement, immunity or non-prosecution agreement. The Government makes no representation about the likelihood that any such agreement will be reached in connection with this proffer.

(2) In any prosecution brought against Client by this Office, except as provided below the Government will not offer in evidence on its case-in-chief, or in connection with any sentencing proceeding for the purpose of determining an appropriate sentence, any statements made by Client at the meeting, except in a prosecution for false statements, obstruction of justice or perjury with respect to any acts committed or statements made during or after the meeting or testimony given after the meeting.

(3) Notwithstanding item (2) above: (a) the Government may use information derived directly or indirectly from the meeting for the purpose of obtaining leads to other evidence, which evidence may be used in any prosecution of Client by the Government; (b) in any prosecution brought against Client, the Government may use statements made by Client at the meeting and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination should Client testify; and (c) the Government may also use statements made by Client at the meeting to rebut any evidence or arguments offered by or on behalf of Client (including arguments made or issues raised sua sponte by the District Court) at any stage of the criminal prosecution (including bail, all phases of trial, and sentencing) in any prosecution brought against Client.

(4) The Client understands and agrees that in the event the Client seeks to qualify for a reduction in sentence under Title 18, United States Code, Section 3553(f) or United States Sentencing Guidelines, Sections 2D1.1(b)(11) or 5C1.2, the Office may offer in evidence, in connection with the sentencing, statements made by the Client at the meeting and all evidence obtained directly or indirectly therefrom.

(5) To the extent that the Government is entitled under this Agreement to offer in evidence any statements made by Client or leads obtained therefrom, Client shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, or any other federal rule that such statements or any leads therefrom should be suppressed. It is the intent of this Agreement to waive all rights in the foregoing respects.

(6) If this Office receives a request from another prosecutor's office for access to information obtained pursuant to this Proffer Agreement, this Office may furnish such information but will do so only on the condition that the requesting office honor the provisions of this Agreement.

(7) It is further understood that this Agreement is limited to the statements made by Client at the meeting and does not apply to any oral, written or recorded statements made by Client at any other time. No understandings, promises, agreements and/or conditions have been entered into with respect to the meeting other than those set forth in this Agreement and none will be entered into unless in writing and signed by all parties.

(8) The understandings set forth in paragraphs 1 through 7 above extend to the continuation of this meeting on the dates that appear below.

(9) Client and Attorney acknowledge that they have fully discussed and understand every paragraph and clause in this Agreement and the consequences thereof.

Dated: New York, New York

*[Signature]*
Client

*[Signature]*
Attorney for Client

PREET BHARARA
United States Attorney for the
Southern District of New York

By: *[Signature]*
Assistant United States Attorney

*[Signature]*
Witness

**Dates of Continuation**

_____

_____

_____

_____

**Initials of counsel, Client, AUSA, witness**

____  ____  ____  ____

____  ____  ____  ____

____  ____  ____  ____

____  ____  ____  ____

2

Rev. 7/06

1A-24

FD-340 (Rev. 4-11-03)

File Number  281A - BS- 93627-302

Field Office Acquiring Evidence _____

Serial # of Originating Document  173

Date Received  12/7/10

From  SA Brian F. Warren
(Name of Contributor/Interviewee)

_____
(Address)

_____
(City and State)

By  SA Brian F. Warren

To Be Returned ☐ Yes  ☒ No
Receipt Given ☐ Yes  ☒ No
Grand Jury Material - Disseminate Only Pursuant to Rule 6 (e)
Federal Rules of Criminal Procedure
  ☐ Yes  ☒ No
Federal Taxpayer Information (FTI)
  ☐ Yes  ☒ No

Title: Anthony Arillotta, et al
OC/LCN/Genovese/Springfield Regime

Reference: _____
(Communication Enclosing Material)

Description: ☒ Original notes re interview of
James Santaniello

MSD

3510-1
James Santaniello

12/7/10                                                                 1/6

Execute proffer.

            JS Consulting
              Mgmt Bus

Sabanello Insurance        PBS - Accounting Company
   w/ brother                      Richard Stambowski
                                        Accountant

Most business w/ DK thru Mudi Gives out
        — mt related to cash flow of

DK met                                              next to
    @ Cocktails bar    JS knew DK's father          West 44th Street
                                                    Vibrato
          Jim Fiore intro..                         Year
          Atty & City Council-s.
          pirate Marche.                            Enforcement
issue           ↳ potential Lobbying / Pro-Esta    working towards.
complicated  ↳ problem w/ expanding establishment
      medicines          zoning Δ's / Certificate of
   City Slope  Dan Silver, It atty assist DK      Occupancy
                                    Fire Inspection
                                DK employed by     don't believe
                                    chk             pay for
                                                    services.
 originally                      Robinson / Donovan

 Richard Corbett, Atty
             { several years
    gradually less available, hence really more w/ DK — politically
                                                        connected
   Then DK on own.
         ↳ Increase work cause less overhead.   w/
              by chk                            Mayor
                                                Albano

2/6

Next OC - (DK own office)
Cause of cash at time of extortion

Cash begin — 2 times

New Room @ Mardi Gras
Bourbon Street
(Dwight/Taylor) ← Frank Cassiti - construction
         ↳ AA FG TA & DK

JS .. knew DK represented "Geus"
                              ↳ wanted Baba's
Why DK ⇒                         business
    ↳ asked if Geus/AA had        only deal w/ AA
      power — are they for real
AA saying we will be better    re cant can they take
              → than Baba for you.   Baba out

         knew that JS + the boys had DK
                                 in common
    ↳ DK - yes, they have power.

have begun 1K cash/wk (1.5 - 2.0) yr ( Pell DK cash over
                possibly small            sorry responsible for cash
Less billing post            amts     earlier pmts.
Robinson
                  Took $ out of cocktails (peak)
Less structured amts.
                originally 500K ———— helping w/
                         ⇒ 1000K        AA permits
      DK - no bill for billing           DK
                                    Referral (losings  F/E
                                    - also was closings
DK - time over OC + buss.
         ↳ DK offer safe haven and a witness (DK)
                                            & safety
                        Geus
w/ DK's help ⇒ sale of
    AA FG TA + NY (4 partners)
                          ↳ Taking Baba's business.

3/6

Vendy Deal (DK, JS attg.)

have JS buys Baba's business

legal papers drawn up → Mark Kenny Albano
                                represented Baba +
  + I'm w/ F/E.                  Cimmino

☒ — detail on          JS-75%  } only on JS location
     meeting          AA-25%

Post Closing
         AA envelope (monthly)
         (1k-2k)  originally JS → AA
                  have issue; not enough  ⇒
                                              DK gets $ 4-6 mos.
both AA     Discussed w/ DK  ☒             after closing
+ FG in    (cause deal out of         why?
  jail      hand ($ getting out of hand)    $ got ridiculous -
TG - running buss.                    grew 3k/wk — 12k/mo
  nightly   JS - DK How can I get out         for several
JS panicked         of this.)                 months.
 + went to DK → meetings at office + Cuevas

                                      → by guy $
9/ — last                                in DK office.
      part  ← almost JS            comfort — "offer"
           (Miphine)

                                 why, $ $ $ no pattern
☒ 288k over 2yrs               envelope KD for DK
                                 AA - blank    weekly
100k                                            retainer.
deal    Cafe Manhattan
note                             JS - Tell DK This is AA's
(DK did                          money
vote)
 only
 owner.   — These guys are torturing
         — Deal brought to DK → JS
         — I can't afford this.
         — Deal not working financially

4/6

DK's response
- agrees -                    Timing (put note for one yr)
             DK in                                      JS made
                                                         points
Art in jail → JS asked DK to talk w/ TG   Also wanted IOK
                 to get me "out of this" for a 1 yr plus
                                              look up note
                             DK - I'll try, I'll
It reverses for 1099 on cash return.        Talk to TG

                         DK reports back that TG
                         was receptive to getting out

Deal struck in DK office
            DK                                    3
            TG              told whole picture
            JS
     needed DK to witness agreement   ≈ 300K
     I was there w/           for          - vending 12K
                           Art + FG        - Recon for poise
          JS + TG meeting

     → TG - said needed to run it by
              Art + FG
(not in writing)
         why cause DK witness

DK handled transfer of Note to Art...
              └ not seen note

TG to notify orig. Note signees.
     └ knew owners due to profitable poker
              machin in Restaurant

DK put retnrl to 750,—   5/6

JS told DK to start billing (≈ 1 yr ago)

🔲

Cash contribution — 100,— here at firm
make contributions on my behalf
JS reimburse

JS — report of activity to DK

Timing beginning early on in 2yr — Few meetings w/ Geas' + DK present in office
(DK set up meetings cause Geas' want to meet you JS.) Time frame
— Get them off my back
possibly came to JS — initially

Reason: Act not accurate
Respons— only in your office —
State Street office —    purpose: have to pay, intimidation

overvealy hrs
JS shifts down
JS deputs meetg — Eg. Ta —

firm you have to pay
DK is your friend
but he can only
do so much for you.

→ To make del you are sorry to P
If I don't pay what happens
backed JS into corner od
shoved at JS.   I'm telling

They had their own identity — apart from Act
They were sorry to get their $